IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HEALTHWERKS, INC.,
SPINE GROUP OF WISCONSIN, LLC,
GREAT LAKES SPINE GROUP, LLC, and
PAUL R. BREITENBACH,                          Case No. 14-cv-93-pp

                    Plaintiffs,

and

BIOMET SPINE, LLC,

                    Involuntary Plaintiff,

v.

STRYKER SPINE,

                    Defendant,

v.

MIKE ROGERS, SCOTT OLIN,
DAN GRAY, JOHN MURRAY,
NICK NOVAK, and ANNIE BRAUER,

                    Third-Party Defendants.

---

**DECISION AND ORDER ON PLAINTIFFS', INVOLUNTARY PLAINTIFF'S,
AND THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS DEFENDANT
STRYKER SPINE'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

---

## I.    Introduction

On January 15, 2014, plaintiffs Healthwerks, Inc., Spine Group of

Wisconsin, LLC (SGW), Great Lakes Spine Group, LLC, and Paul R.

Breitenbach, along with involuntary plaintiff Biomet Spine, LLC—collectively,

for the purposes of this order, "the declaratory plaintiffs"—filed a complaint against defendant Stryker Spine in Ozaukee County Circuit Court. Docket #1-1. The complaint sought a declaratory judgment that certain contracts between the parties had terminated on January 1, 2011, and that the plaintiffs owed no further obligations to the defendant under those agreements. Id. On January 28, 2014, Stryker removed the case to the Eastern District of Wisconsin. Docket #1.

On September 26, 2014, Stryker filed an answer, counterclaims, and a third-party complaint. Docket #40. Stryker's counterclaim alleged ten counts against the declaratory plaintiffs, and six counts against individual third-party defendants Mike Rogers, Scott Olin, Dan Gray, John Murray, Nick Novak, and Annie Brauer (collectively, for the purposes of this order, "the sales representatives"). On October 30, 2014, the declaratory plaintiffs, the involuntary plaintiff on its own, and the sales representatives each moved to dismiss all ten of Stryker's counterclaims under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). Docket ##46, 48, and 51. This order resolves those motions.

## II.   Procedural History

Ten days after Stryker removed the case to federal court, it moved to dismiss the declaratory action for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3). Docket #6. Stryker argued that the declaratory plaintiffs were asking a court to interpret contracts which contained mandatory arbitration provisions. In the alternative, Stryker asked that if the court declined to dismiss the case,

2

it stay the case until the completion of a pending arbitration proceeding in New Jersey among Stryker, SGW, Great Lakes, Healthwerks, and Breitenbach. Id.

In response, the declaratory plaintiffs filed a motion asking the court to stay the New Jersey arbitration proceedings. Docket #9. Stryker objected. Docket #14. The declaratory plaintiffs also filed briefs in opposition to Stryker's motion to dismiss. Docket #20, #21. Stryker filed a reply. Docket #23.

Before the court had a chance to rule on the motion to dismiss and the competing motion to stay the arbitration, the declaratory plaintiffs filed a motion for summary judgment, arguing that the core issue in the case was Stryker's argument that the declaratory plaintiffs had breached implied non-compete and confidentiality agreements, and that Wisconsin law didn't recognize implied non-compete and confidentiality agreements. Docket ##24, 25. Stryker asked the court to stay briefing on *that* motion until it had resolved the motion to dismiss. Docket #28. It asked that even if the court didn't dismiss the case, it stay briefing on the summary judgment motion to allow the parties to conduct discovery. Id. The declaratory plaintiffs objected. Docket #34.

On September 5, 2014, Judge J.P. Stadtmueller, to whom the case was assigned at that time, issued an order denying Stryker's motion to dismiss, finding no evidence in the record that the implied contracts Stryker alleged existed contemplated an agreement to arbitrate. Docket #39 at 5. He also denied Stryker's request to stay the federal litigation pending arbitration. Id. Judge Stadtmueller denied the declaratory plaintiffs' motion to stay the New

Jersey arbitration proceedings on the ground that the declaratory plaintiffs had cited no legal authority in support of that request. Id. at 6. Finally, Judge Stadtmueller denied the declaratory plaintiffs' motion for summary judgment without prejudice, to allow Stryker to answer the complaint and conduct discovery. Id.

On September 26, 2014, Stryker answered the complaint. Docket #40. It also filed a counterclaim and third-party complaint, alleging eight counterclaims against various of the declaratory plaintiffs, and four third-party claims against the sales representatives—a total of ten counts, in all. Id. at 14.

The battle having been joined, Judge Stadtmueller noticed a Rule 16 scheduling conference for October 23, 2014. Docket #41. The declaratory plaintiffs then filed a request to extend time to respond to Stryker's counterclaims, docket #44, as well as a request to adjourn the Rule 16 conference, docket #45. Judge Stadtmueller granted both requests by text-only order.

It was at this point, on October 30, 2014, that the declaratory plaintiffs and the sales representatives filed motions to dismiss Stryker's counterclaims and third-party claims. Docket ##46, 47 (Biomet), 48,49 (sales representatives), 51, 52 (declaratory plaintiffs).

Judge Stadtmueller held the Rule 16 scheduling conference on November 14, 2014. Docket #58. He set dates, including a September 21 trial date. While Stryker suggested that the schedule might be a bit optimistic, Judge Stadtmueller disagreed. Id. Over the next month, the parties continued

exchanging briefs on the October 30 motions to dismiss. Docket ## 59, 62, 66, 67, 69.

On December 29, 2014, the case was reassigned to this court. At that point, the parties asked the court to set up a status conference, to discuss the scheduling of the case. Docket #72. The court held the conference on March 3, 2015, docket #75, and as a result, modified the scheduling order, docket #77. The court has adjusted the schedule since then; the parties will meet by phone on May 21, 2015 to discuss trial dates. Docket #80.

## III.   Facts

On January 14, 2008, Stryker, a New Jersey-based manufacturer of spine-related products, entered into two "Exclusive Agency Agreements" with declaratory plaintiff SGW. Docket ## 40-2, 40-3 ("the 2008 Agreements"). The agreements indicated that Stryker developed, manufactured, distributed and sold products for the spinal industry. Id. at 1. Stryker agreed to grant SGW the exclusive right to sell Stryker's products in a prescribed territory (Wisconsin and Iowa for docket #40-2; a territory defined in an unsupplied "Implant Agreement" for docket #40-3, although Stryker's counterclaim alleges Wisconsin and Northern Michigan, docket #40 at 6). Docket #40-2 at 2, Attachment A; docket #40-3 at 2) Both agreements provided that the agreements were "governed by, construed and enforced in accordance with the laws of the State of New Jersey, without regard to the principles thereof regarding conflicts of laws." Docket #40-2 at 44; Docket #40-3 at 41.

5

The 2008 Agreements contain identical sections 15, entitled "Confidentiality; No Competition." Docket #40-2 at 33; Docket #40-3 at 31. Each section 15 has eight sub-sections. Docket #40-2 at 33-39; Docket #40-3 at 31-37. Section 15(a) prohibited SGW from selling comparable products or joining a competing entity during the term of the 2008 Agreement and for one year after the Agreement terminated. Docket #40-2 at 33; Docket #40-3 at 31. This restriction was effective "during the term of this Agreement and during the one (1) year period after the non-renewal or termination of this Agreement . . . ." Docket #40-2 at 33; Docket #40-3 at 31. Section 15(f) required each employee, agent or service representative to execute a non-compete/confidentiality agreement "substantially identical" to the one required by subsection (a), and to acknowledge that SGW's benefits and rights to enforce that agreement also were for the benefit of Stryker. Docket #40-2 at 39; Docket #40-3 at 36. It also required SGW to provide Stryker with copies of such agreements within five days of their execution. Id.

The 2008 Agreements became effective January 1, 2008. They provided for a one-year term that would automatically extend upon SGW's achievement of certain performance quotas, and could be extended further if Stryker notified SGW in writing more than sixty days before expiration that it wanted to do so. Docket #40-2 at 3-4; Docket #40-3 at 3-4. According to the counterclaim, Stryker did not extend the term beyond December 31, 2010. Docket #40 at 9; none of the other parties dispute this fact.

According to Stryker, the parties "did not execute a new agreement; rather, they continued to operate under the terms of the 2008 Agreements, creating an implied contract." Docket #40 at 9. In contrast, the declaratory plaintiffs alleged that "[i]n the absence of the Terminated Spine Agreement, from January 1, 2011 until January 14, 2014, SGW acted as a commissioned sales representative of Stryker Spine with respect to the sale of Spine Products . . . ." Docket #1-1 at ¶13. SGW terminated that relationship on January 14, 2014, by a letter transmitted by e-mail. Docket #40-9. On that same day—January 14, 2014—Healthwerks, Inc., an affiliate of SGW, entered into a contractual relationship with involuntary plaintiff Biomet, a direct competitor of Stryker. Docket #1-1 at ¶30.

Stryker alleges in the counterclaim that the declaratory plaintiffs "abrupt[ly]" terminated their long-time relationship with Stryker, and in a matter of days after that abrupt termination, starting selling products in competition with Stryker. Stryker claims that these actions violated "applicable restrictive covenants." Docket #40 at 14. All of the counterclaim's allegations of wrong-doing post-date "early 2013"—in other words, the alleged violations took place in the period of time after the 2008 Agreements expired by their terms. Id. at 11. Stryker alleges, however, that after the written agreements expired, their terms—particularly the non-compete and confidentiality provisions—continued as implied contracts, and that the declaratory plaintiffs and the sales representatives violated those implied contracts. Docket #40.

7

## IV.    Analysis

### A.    Jurisdiction and Venue

All of the declaratory plaintiffs are Wisconsin businesses or individuals. Docket #19 at 1-2. Involuntary plaintiff Biomet is a Delaware limited liability company with membership interests in Delaware and Indiana. Id. at 2. Defendant Stryker is a New Jersey corporation. Id. The parties agree that the amount in controversy exceeds $75,000. Id. Accordingly, the court has diversity jurisdiction under 28 U.S.C. §1332(a)(2). Docket #39 at 2 n.2 (". . . the Court is satisfied that this civil action is between 'citizens of different States' within the meaning of 28 U.S.C. § 1332."). No party has challenged venue, and Stryker alleges that venue lies in the Eastern District because a "substantial part" of the events giving rise to its causes of action occurred here. See 28 U.S.C. §1391(b)(2).

### B.    Standards for Motions to Dismiss

Involuntary plaintiff Biomet asks the court to dismiss Counts II, IV and V of Stryker's counterclaim because they fail to state a claim upon which relief can be granted, but do not cite any federal rule in support of that request. Docket ##46,47. The sales representatives and the declaratory plaintiffs ask the court to dismiss Stryker's counterclaim under Fed. R. Civ. P. 12(b)(6) and 9(b). Docket ##48, 49, 51, 52.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must state a claim for relief that is plausible on its face." Lodholtz v. York Risk Servs. Group, Inc., 778 F.3d 635, 639 (7th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Lodholtz, 778 F.3d at 639 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court "draw[s] all reasonable inferences and facts in favor of the nonmovant," but the court "need not accept as true any legal assertions." Lodholtz, 778 F.3d at 639 (citing Vesely v. Armslist LLC, 762 F.3d 661, 664-65 (7th Cir. 2014)).

Count VI of Stryker's counterclaim alleges fraud against declaratory plaintiffs "Spine Group (SGW, Great Lakes and Breitenbach)." Rule 9(b) requires heightened pleading for fraud allegations. U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc., 772 F.3d 1102, 1105—06 (7th Cir. 2014) ("Rule 9(b) of the Federal Rules of Civil Procedure requires that in alleging fraud . . . a party must state with particularity the circumstances constituting fraud."). This requirement "includes pleading facts that make the allegation of fraud plausible." Id. at 1106 (citing Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs., Inc., 536 F.3d 663, 668-69 (7th Cir. 2008)). Further, "[t]he complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." U.S. ex rel. Grenadyor, 772 F.3d at 1106 (citing Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992)).

C.     The Substantive Allegations

The court emphasizes at the outset that the three motions in question are motions to dismiss. As noted in the procedural history, early in the case—before Stryker had responded to the complaint—the declaratory plaintiffs filed a motion for summary judgment. Docket #24. Judge Stadtmueller denied that motion, indicating that he wanted to give Stryker a chance to answer, and the parties a chance to conduct discovery. Docket #39. The court does not know whether the parties have exchanged any discovery over the seven months that have passed since Judge Stadtmueller issued that decision; all the court knows is that they have devoted time and energy to briefing these motions to dismiss. But the declaratory plaintiffs have not renewed the summary judgment motion.

The court emphasizes this point because the standard a court applies in deciding whether to dismiss a complaint for failure to state a claim is distinctly different from the standard it applies when deciding whether to grant summary judgment. A plaintiff (or, in this case, a counter-plaintiff) need present no evidence at the pleading stage of the case. Carlson v. CSX Transp., Inc., 758 F.3d 819, 827 (7th Cir. 2014). The reviewing court looks only at the content of the complaint, construes it in the light most favorable to the plaintiff, accepts as true any well-pleaded facts, and "draws all inferences in the plaintiff's favor." Id. at 826. While the court need not accept all of the plaintiff's legal assertions as true, Lodholtz, 778 F.3d at 639 (citing Vesely v. Armslist LLC, 762 F.3d 661, 664—65 (7th Cir. 2014)), the question is one of plausibility—has the plaintiff presented a plausible claim that allows the court to draw a reasonable

10

inference that the defendants may be liable. If so, the counter-complaint, or the particular claim, survives.

## 1. *Breach of Contract*

In the counterclaim, Stryker alleged two breach of contract claims. In Count I, Stryker alleged breach of express contract against "Spine Group (which includes SGW, Great Lakes and Breitenbach)."[1] Docket #40 at 16. Specifically, it alleges that after it received Spine Group's January 14, 2014 termination notice, it demanded, pursuant to section 15(f) of the 2008 agreements, copies of the non-compete/confidentiality agreements signed by the employees, agents or sales representatives, id. at ¶87, and that despite numerous requests, Spine Group failed to provide those agreements, id. at ¶88. It alleges, therefore, that Spine Group breached section 15(f) of the 2008 Agreements by failing to have each sales rep execute the required non-compete agreement, failing to produce those agreements, "and/or" failing to identify Stryker as a beneficiary of the agreements. Id. at ¶89.

In Count VIII of the counterclaim, Stryker alleged that effective January 1, 2005, each of the sales representatives entered into "Sales Representative Agreements" ("SRAs"). Id. at ¶¶146, 147. Section 10 of the SRAs provided that the sales reps would not sell in competition with Stryker products. Id. at ¶148. The agreements would automatically renew for periods of

---

[1] Depending on the count, Stryker sometimes makes allegations against a collective—"Spine Group (SGW, Great Lakes, and Breitenbach)"—and other times separates out individual members of this collective. While "SGW" is short for "Spine Group of Wisconsin," Stryker seems to use the phrase "Spine Group" to refer to the collective of SGW, Great Lakes, and Breitenbach. The court tries to use the phrase as Stryker does.

one year unless Spine Group or the sales reps provided thirty-day advance notice of termination. Id. at ¶152. Stryker alleges that neither Spine Group nor any of the sales reps have provided such notice, and thus that those SRAs and their non-compete agreements remain in effect. Id. at ¶153. It alleges that the sales reps have breached, and continue to breach, those agreements by, among other things, agreeing to sell competing products to Biomet. Id. at ¶154.

### a. Count I—Breach of the 2008 Agreements

Stryker states that Count I alleges a breach of "express" contract—those "express" contracts being the 2008 Agreements. The parties all agree that the 2008 Agreements expired on December 31, 2010; the section 15(a) non-compete provisions remained in effect, by their terms, for another year—until December 31, 2011. Stryker alleges that in January 2014, it demanded copies of the sales agents' section 15(f) non-compete agreements, and that the declaratory plaintiffs never have provided those contracts.

The declaratory plaintiffs argue that there was no express contract in effect in January 2014. They argue that there can be no breach of express contract when there was no contract in effect. If Stryker is alleging that the declaratory plaintiffs were obligated to produce agreements in January 2014, the court agrees with the declaratory plaintiffs that no express contractual obligation existed in January 2014, and thus that the declaratory plaintiffs had no contractual obligations to produce anything in January 2014. If, instead, Stryker is alleging that the declaratory plaintiffs were supposed to have

12

produced contracts sometime between January 1, 2008 and January 1, 2012, it has not alleged facts sufficient to make that clear.

Accordingly, the court finds that Stryker has failed to state a breach of express contract claim in Count I of the counterclaim, and grants the declaratory plaintiffs' motion to dismiss Count I.

b.   Count VIII—Breach of the SRAs

In Count VIII, Stryker alleges that the sales representatives breached Section 10 of the SRAs. The SRAs are contracts between SGW and each individual sales agent. Section 10 of the SRAs prohibits the sales reps from, among other things, "directly or indirectly, manufactur[ing], sell[ing], market[ing], deliver[ing] or provid[ing] any Product or any product or any other service if such product or service is in competition with any Product." Docket #40-10 at 7. Exhibit B to the SRA defines "Products" as "[t]he products and services of Stryker Spine for which the Company [SGW] serves as a manufacturers [sic] or sales representative." Id. at 19.

Stryker alleges in Count VIII that "Stryker Spine is the intended third-party beneficiary of each Sales Representative Agreement because the contract was entered into between SGW and each Sales Representative pursuant to Section 15(f) of the 2005 or 2008 Agreements, because the restrictive covenants set forth in the Sales Representative Agreement are for the protection of Stryker Spine's confidential information and customer relationships . . . ." Docket #40 at ¶147. The 2005 agreement to which Stryker refers is an Exclusive Agency

13

Agreement dated January 11, 2005, between Stryker and SGW, containing the same sections 15(a) and (f) as the 2008 Agreements. Docket #40-1 at 27-33.

The sales representatives argue that the court should dismiss Count VIII because the sales representatives did not intend Stryker to be a third-party beneficiary of the SRAs. Docket #49 at 22. They argue that Wisconsin law requires a plaintiff acting on a third-party beneficiary theory to show that the parties entered into the contract "directly and primarily to benefit the third party." Id., citing Christnacht v. Dep't of ILHR, 228 N.W.2d 690, 695 (Wis. 1975) (citations omitted). They ask the court to interpret the language of the SRAs to decide whether or not the parties entered into the contract with that intent.

The SRAs do not contain a choice of law provision. In a diversity action, state common law applies. McCloud Const., Inc. v. Home Depot USA, Inc., 149 F. Supp. 695, 699 (E.D. Wis. 2001), citing Erie R.R. Co. v. Thompkins, 304 U.S. 64 (1938). In the absence of a valid choice of law provision in the contract, "Wisconsin applies the local law of the state with which the contract has its most significant relationship." Id. at 701, citing Handal v. Am. Farmers Mut. Cas. Co., 79 Wis. 2d 67, 73 (1977). The sales representatives assume that state to be Wisconsin; the question has not yet been fleshed out.

The court finds that, in contrast to Count I, Count VIII states a plausible claim on its face. The sales representatives ask the court to apply Wisconsin law, and to interpret Wisconsin law, and the language of the SRAs, to determine whether or not Stryker can prove a claim. But at the pleadings

stage, the question is not whether Stryker can prove the claim—it is whether Stryker has alleged a plausible claim. Stryker has alleged that contracts existed, that they have not been terminated, that it was a third-party beneficiary to those contracts, that the sales representatives have sold in violation of the contracts, and that Stryker was damaged as a result. Accordingly, the court denies the sales representatives' motion to dismiss Count VIII.

### 2. *Breach of Implied Contract*

In Count III of the counterclaim, Stryker alleges that "Spine Group (SGW, Great Lakes and Breitenbach)" breached an implied contract. Stryker alleges that after the 2008 Agreements expired on December 31, 2010 (and the section 15(a) non-compete provisions expired on December 31, 2011), both Stryker and the declaratory plaintiffs "continued to operate under the terms of the 2008 Agreements until January 14, 2014." Docket #40 at ¶¶101, 103. It argues that "[t]he parties' course of dealing created an implied contract between [the parties] based on, and governed by, the terms of the 2008 Agreements." Id. at ¶104. It further argues that that implied contract "contain[ed] all of the material terms present in the 2008 Agreements, including, *inter alia*, the restrictive covenants set forth in Section 15." Id. at ¶105.

Because Stryker maintains that the 2008 Agreements lived on until 2014, it alleges that the declaratory plaintiffs have, between 2011-2012 and January 14, 2014, breached that implied contract in numerous ways, including terminating the implied contract without good cause, selling

15

competing products in the covered territory, failing to require sales representatives to execute non-compete agreements, and failing to provide copies of such agreements to Stryker. Id. at ¶108. Stryker alleges that it has suffered damages as a result of these numerous breaches. Id. at ¶109.

The declaratory plaintiffs argue that, for a variety of reasons, the non-compete provisions of the 2008 Agreements were not so long-lived—Wisconsin law "would not honor an alleged 'implied' non-compete," docket #52 at 6; an implied non-compete would violate the Wisconsin statute of frauds, id. at 10-11; the 2008 Agreements' requirement that all modifications to the contract must be in writing means there could be no implied extension, id. at 11; and the 2008 Agreements themselves contain no language contemplating implied extension, id. at 12-14.

Interestingly, given the declaratory plaintiffs' reliance on Wisconsin law, the 2008 Agreements contain a New Jersey choice-of-law provision. The declaratory plaintiffs argue, despite that fact, that Wisconsin law governs the scope and validity of the non-compete provisions. Docket #52 at 7, n.6. In support of this assertion, the declaratory plaintiffs cite Tradesman Int'l, Inc. v. Black, 724 F.3d 1004, 1018 (7th Cir. 2013). Page 1018 of Tradesman is a portion of Judge Hamilton's concurrence in a breach of contract and trade secrets case. What Judge Hamilton actually stated on page 1018 was, " . . . Wisconsin has a statute that prohibits enforcement of unreasonable covenants 'even as to any part of the covenant or performance that would be a reasonable

restraint.' Wis. Stat. § 103.465. On the basis of that statute, Wisconsin courts refuse to honor contractual choices of law that would evade it."

Thus, the <u>Tradesman</u> decision does *not* hold that Wisconsin law governs non-compete provisions. Rather, in a concurrence, it points out that Wisconsin law prohibits enforcement of an unreasonable covenant, and that a Wisconsin court would refuse to honor a choice-of-law provision that would evade that law.

The court raises this point because, with regard to the breach of implied contract claim, the declaratory plaintiffs' arguments are, in the court's view, legal arguments of the type the court would expect to see in a motion for summary judgment. The declaratory plaintiffs cannot support an assertion that that counterclaim does not plausibly allege that there was a contract—the complaint does allege that there was an implied contract. They cannot support an argument that Stryker hasn't alleged breaches of that contract—it has so alleged. They cannot argue that Stryker hasn't alleged that it suffered damages as a result of the breach—it has so alleged.

Rather, they argue that even if the declaratory plaintiffs did everything that Stryker claims they did, they could not have breached an implied contract because various provisions of Wisconsin law mandate the conclusion that such an implied contract could not have existed. In essence, they ask the court, on a Rule 12(b)(6) motion to dismiss, to decide that Wisconsin law applies to the claim (despite the contracts' choice of law provision), and then to interpret various provisions of Wisconsin law to conclude that Wisconsin law does not

17

recognize implied non-compete agreements. This is not an attack on the facial plausibility of the complaint; it is a legal construction argument for summary judgment.

The declaratory plaintiffs' arguments also ignore the fact that Stryker did not allege only a breach of an implied non-compete provision. It alleged breach of implied contract, period—it alleged that an implied contract existed in January 2014, and that the declaratory plaintiffs breached that implied contract by terminating their relationship with Stryker. Even if Wisconsin law applied, and even if the court concluded that it prohibited implied *non-compete* contracts, that would not address Stryker's other breach of implied contract allegations.

In sum, the court finds that Stryker has plausibly alleged a breach of implied contract claim, and denies the declaratory plaintiffs' motion to dismiss Count III.

### 3. Promissory and Equitable Estoppel

In Count VII of the counterclaim, Stryker alleges that between the expiration of the 2008 Agreements and January 2014, "Spine Group (SGW, Great Lakes, and Breitenbach)" led Stryker to believe that the terms of the 2008 Agreements remained in effect, by continuing to conduct business under those terms, by negotiating with Stryker to continue the relationship, and by failing to inform Stryker that it was negotiating with a competitor (Biomet). Docket #40 at ¶135. Stryker claims that, knowing that Stryker thought the 2008 Agreement terms remained in effect, the declaratory plaintiffs were,

unbeknownst to Stryker, planning to terminate the relationship with Stryker and form a new relationship with Biomet. Id. at ¶¶137-138. Unknowing, Stryker allowed the declaratory plaintiffs to continue as its exclusive agents, and relied to its detriment on the declaratory plaintiffs' misrepresentations and silence. Id. at ¶¶140-142. It alleges that it has been damaged as a result of the declaratory plaintiffs' actions, and that they should be estopped from denying the enforceability of the 2008 Agreements—specifically, the restrictive covenants. Id. at ¶¶143-44.

The equitable doctrine of promissory estoppel started out "as a substitute for consideration rendering a gratuitous promise enforceable as a contract." Hoffman v. Red Owl Stores, Inc., 26 Wis. 2d 683, 697-98 (1965). Wisconsin law mandates that a plaintiff striving to render that gratuitous promise enforceable must prove three elements: "(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise? (2) Did the promise induce such action or forbearance? (3) Can injustice be avoided only by enforcement of the promise?" Id.

"The existence of a contractual relationship bars a promissory estoppel claim, unless the contract fails to address the essential elements of the parties total business relationship." Bertha v. Remy Int'l., Inc., 414 F. Supp. 2d 869, 881 (E.D. Wis. 2006). As discussed above, Stryker has alleged the existence of both express and implied contracts, and has alleged that those contracts laid out the essential elements of the parties' business relationship. In order to

prevail on its promissory estoppel claim, Stryker would have to demonstrate that there was no contract in existence under which it could enforce the declaratory plaintiffs' promises. It would have to prove that there was no implied contract, when it has vigorously asserted in Count III that there was.

Stryker attempts to resolve this problem by alleging its promissory estoppel claim "(In the Alternative)" in the header of Count VII. Docket #40 at 26. But the opening paragraph—¶133—of Count VII reads, "Stryker Spine hereby repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 132." Docket #40. The remaining paragraphs in Count VII do not identify any promises "made apart from those which should have been made in the contract between the parties." Non Typical Inc. v. Transglobal Logistics Group Inc. No. 10-CV-1058, 2011 WL 1792927, at *7 (E.D. Wis. May 11, 2011). Stryker's allegations that the declaratory plaintiffs misled it into assuming the existence of, and relying on, an implied contract by acting as if there was an implied contract demonstrate that that alleged implied contractual relationship bars the promissory estoppel claim.

Accordingly, the court finds that, as the complaint currently is constructed, Stryker has not alleged a promissory estoppel claim upon which relief can be granted, and grants the declaratory plaintiffs' motion to dismiss Count VII.

### 4.    Good Faith and Fair Dealing

In count X of the counterclaim, Stryker alleges that declaratory plaintiff Spine Group, by leading it to believe that the terms of the 2008 Agreements

remained in force after their termination, breached its duty of good faith and fair dealing, causing damage to Stryker.

"Wisconsin common law . . . reads the duty of good faith into every contract." Hauer v. Union State Bank of Wautoma, 192 Wis. 2d 576, 598 (Ct. App. 1995). Here, the contract into which Wisconsin common law would read a duty of good faith is the implied contract Stryker alleges existed between the expiration of the 2008 Agreements and January 2014. "Under Wisconsin law an implied covenant 'does not support an independent cause of action for failure to act in good faith under a contract.'" Alliance Laundry Sys. LLC v. Eaton Corp., No. 13-CV-687, 2013 WL 5719011, at *5 (E.D. Wis. Oct. 21, 2013) (citing Hauer, 192 Wis. 2d at 596).

Because Wisconsin law reads the duty of good faith into every contract, because Wisconsin law does not recognize an independent cause of action for failure to act in good faith, and because the claim is derivative of Stryker's claim for breach implied contract, the court finds that Stryker has not stated a breach of good faith claim upon which relief can be granted, and grants the declaratory plaintiffs' motion to dismiss Count X of the counterclaim.

5. Tortious Interference with Contract

In Count II of the counterclaim, Stryker alleges that declaratory plaintiffs Healthwerks and Biomet, knowing that Stryker had a contractual relationship with Spine Group and the sales representatives, intentionally induced Spine Group and the sales reps to violate the restrictive covenants and other contractual obligations. Docket #40 at. 17-18. Stryker alleges that Healthwerks

and Biomet did this in order to "associate with the former sales representatives of Spine Group" to destroy Stryker's market presence in the relevant territories, take over Stryker business, and unfairly compete with Stryker. Id. at ¶96. Stryker asserts that Healthwerks and Biomet weren't "protected by the privilege of competition," because their actions were malicious and intentional. Id. at ¶¶97-99. Finally, Stryker argues that not only did it suffer monetary damages as a result of this tortious interference, but it is threatened with losing goodwill, reputation, the value of confidential information, and customer relationships. Id. at ¶99.

Wisconsin law requires that a plaintiff prove five elements when bringing a claim for "interference with a present or prospective contractual relationship": "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." Tex. Ujoints, LLC v. Dana Holding Corp. Mach. Serv., Inc., No. 13-C-1008, 2013 WL 6230675, at *3 (E.D. Wis. Dec. 2, 2013) (quoting Burbank Grease Servs., LLC v. Sokolowski, 294 Wis. 2d 274 (2006)).

"In order to succeed on a tortious interference with a contract claim, the plaintiff must establish that someone 'intentionally and improperly interferes with the performance of a contract.'" Sysco Food Servs. of E. Wis., LLC v. Ziccarelli, 445 F. Supp. 2d 1039, 1055 (E.D. Wis. 2006) (quoting Wausau Med. Center, S.C. v. Asplund, 182 Wis. 2d 274, 297 (Ct. App. 1994)). The Seventh

Circuit requires a plaintiff "to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009), quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 547 (2007). The Seventh Circuit also has held, however, that "in examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" Id. (internal citations omitted).

"In determining intent," in the context of a tortious interference claim, courts "may consider an individual's actions and statements. Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her actions." Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C., 287 Wis. 2d 560, 576 (Ct. App. 2005). This district has upheld a claim for tortious interference with contract when the plaintiff "alleged facts that, if true, would make it plausible" that the defendants "'knew or should have known' that selling the . . . product . . . would interfere with [the plaintiff's] prospective contract to sell the . . . product . . . ." Stucchi USA, Inc. v. Hyquip, Inc., No. 09-CV-732, 2011 WL 1527033, at *7 (E.D. Wis. Apr. 20, 2011).

In paragraphs 91-99 of the counterclaim, Stryker attempts to allege the five elements of tortious interference with contract. Stryker first, as is common, incorporates all of the previous allegations in the complaint—which allege that Stryker had a valid contract with the declaratory plaintiffs, and that the

declaratory plaintiffs breached that contract. Docket #40 at ¶91. Stryker then alleges that Healthwerks and Biomet knew of that contractual relationship, id. at ¶¶93-95, and that they interfered with that relationship, id. at ¶96. Stryker alleges that Healthwerks and Biomet "intentionally induced, permitted or incentivized Spine Group and the Sales Representatives to violate their contractual obligations, including the restrictive covenants . . . without justification." Id. Finally, Stryker alleges that no privilege protects Biomet or Healthwerks.

Wisconsin courts look to the alleged interferer's "actions and statements." Wolnak, 287 Wis. 2d at 576. Although Stryker's allegations touch on each of the five elements of tortious interference with contract, Stryker fails to allege any specific actions taken or statements made by Healthwerks and Biomet. Instead, Stryker has simply made that "formulaic recitation of a cause of action's elements" which the Seventh Circuit has declared "will not do." Bissessur, 581 F.3d at 602. Although the court may "give the [complaining] party the benefit of imagination," the complaining party must present facts that sufficiently line up with the stated legal claims. Id. Stryker has not presented such facts. Thus, the court finds that Count II fails to state sufficient facts to state a facially plausible claim. The court will grant the declaratory plaintiffs' motion to dismiss Count II of the counterclaim.

### 6. Tortious Interference with Prospective Business Relations

In Count IV of the counterclaim, Stryker alleges that "Spine Group (SGW, Great Lakes and Breitenbach), Healthwerks, Biomet and Sales Representatives"

24

all committed tortious interference with Stryker's prospective business relations. Docket #40 at 35. In Count IX, Stryker brings a claim of tortious interference with prospective business relations against only the sales representatives. Docket #40 at 44.

As an initial matter, the court notes that all but one of the paragraphs in the two counts are almost identical. The difference is between ¶113 in Count IV and ¶159 in Count IX. In ¶113, alleged against the declaratory plaintiffs and the sales reps, Stryker alleges:

> Notwithstanding their knowledge of the existence of these relationships and expectancies, Defendants intentionally and unjustifiably interfered with Stryker Spine's business relationships with its customers and/or prospective customers in the Territory by (i) intentionally misleading Stryker Spine into believing that Spine Group was engaged in good faith negotiations to renew their exclusive agency agreement while Defendants were actively engaged in negotiations with Biomet, one of Stryker Spine's direct competitors; and (ii) soliciting Stryker Spine's customers to leave Stryker Spine and move their business to Healthwerks and/or Biomet in violation of contractual obligations owing to Stryker Spine.

In contrast, in ¶159, alleged only against the sales representatives, Stryker alleges:

> Notwithstanding their knowledge of the existence of these relationships and expectancies, the Sales Representatives intentionally and unjustifiably interfered with Stryker Spine's business relationships with its customers and/or prospective customers in the Territory by soliciting Stryker Spine's customers to leave Stryker Spine and move their business to Healthwerks and/or Biomet in violation of contractual obligations owing to Stryker Spine.

It appears, therefore, that Stryker named the sales representatives in two tortious interference with prospective business claims so that it could allege, in

Count IV, that the sales reps intentionally misled Stryker into believing that that SGW was engaged in good-faith negotiations to extend its relationship with Stryker, even as SGW was negotiating with a competitor. Stryker has provided no facts, anywhere in the complaint, to support a claim that the sales representatives knew of, or were part of, the negotiations between Stryker and SGW, or any negotiations between SGW and competitors. Thus, the court must dismiss Count IV as against the sales agents.

The declaratory plaintiffs urge the court to dispose of Count IV because "Wisconsin does not recognize a claim for 'tortious interference with a business relationship' . . . ." Neuroscience, Inc. v. Forrest, No. 12-CV-813, 2013 WL 6331348, at *2 (W.D. Wis. Dec. 5, 2013) (citations omitted). But the Wisconsin Court of Appeals puts a slightly different gloss on the existence of a tortious interference with business relationships cause of action.

In Wisconsin Housing and Economic Development Authority v. Tri Corp Housing, Inc., 334 Wis. 2d 809 (Ct. App. May 10, 2011), the court walked through the evolution of Wisconsin's version of the claim. 'The law relating to interference with a business relationship has been described in terms of an existing or prospective contractual relationship." Id. at *6 "Wisconsin first adopted the cause of action for intentional interference with an existing contractual relationship in" 1960. Id. (citing Mendelson v. Blatz Brewing Co., 9 Wis. 2d 487, 491 (Wis. 1960)). "In Mendelson, our supreme court adopted the original version of the Restatement (First) of Torts §766 (1939), which incorporated causes of action for existing and prospective contracts. Since

then, the law of torts in Wisconsin ... evolved to include intentional interference with business relationships, not necessarily established by formal" agreements. Wis. Housing, 334 Wis. 2d at *6. The court emphasized the policy of protecting the "numerous business relationships which are long term and commercially valuable but which could not be considered a contract." Id. at *7. "Protecting such relationships from improper interference in the same way commercial relationships evidenced by contract are protected appears to be contemplated" by the Restatement (Second) of Torts §766B. Id. While as recently as 2001, the Wisconsin courts had not "specifically considered a case involving one party's intentional interference with an established history of business referrals," the court concluded that because Wisconsin had adopted "the Restatement (Second) of Torts §766(b)," Wisconsin "would reasonably include protection of an established business relationship not formalized by a contract." Id.

"The elements of [a tortious interference with contract claim] are (1) a contractual relationship on behalf of the plaintiff; (2) knowledge by the defendant of the existence of the contractual relationship; (3) intentional acts on the part of the defendant to disrupt the relationship; (4) actual disruption of the relationship causing damages; and (5) lack of privilege or justification for defendant's interference." Forrest, 2013 WL 6331348, at *2 (internal citations omitted); see also Tex. Ujoints, 2013 WL 6230675, at *3. The Wisconsin Housing court indicated that, in considering a claim of tortious interference with a business relationship, the court could substitute "history of [business

relationships]" for "contractual relationship" to describe the elements of that claim. Wis. Housing, 334 Wis. 2d at *7.

In Count IV, Stryker alleges that it "maintained valid business relationships, or expectancy of business relationships, with its customers and/or prospective customers in the Territory." Docket #40 at ¶111. According to Stryker, the declaratory plaintiffs had knowledge of these relationships. Id. at ¶112. Stryker asserts that despite that knowledge, the declaratory plaintiffs "intentionally and unjustifiably interfered" with those relationships. Id. at ¶113. The disruption of those relationships occurred when the declaratory plaintiffs "intentionally mis[led] Stryker Spine into believing that Spine Group was engaged in good faith negotiations to renew" the 2008 agreements and when they "solicit[ed] Stryker Spine's customers to leave Stryker Spine and move their business to Healthwerks and/or Biomet." Id. at ¶114. Stryker asserts that no privilege or justification protects the counter-defendants. Id. at ¶114. Finally, Stryker asserts that it has lost "the value of their confidential information and customer relationships, along with its goodwill and reputation." Id. at ¶115.

Stryker has pled each of the elements of tortious interference with prospective business described above. It has alleged that there was an implied contract; that declaratory plaintiffs Spine Group, Great Lakes and Breitenbach knew of that relationship; that those entities intentionally acted to disrupt, and did disrupt, the contractual relationship; and that no privilege protected those actions.

The declaratory plaintiffs respond that Stryker does not name the specific entities or individuals with whom it had the allegedly interfered-with relationships. This is true, but does not require dismissal. Stryker has alleged that such relationships existed and that the declaratory plaintiffs interfered with them. That is sufficient to defeat a Rule 12(b)(6) motion. The declaratory plaintiffs also argue that Stryker has not alleged any "improper" conduct. The court notes that "improper conduct" is not an element of a tortious interference with contract (or, under Wisconsin Housing, interference with business relationships) claim.

The declaratory plaintiffs' final argument is that any interference with business relationships which did occur was justified or privileged. Wisconsin law holds an interfering party liable for such tortious conduct "unless it's [sic] conduct was privileged." Landess v. Borden, 667 F.2d 628, 631 (7th Cir. 1981). "Factors to be considered in determining whether [the] conduct was privileged include (a) the nature of the [defendant's] conduct; (b) the nature of the [the plaintiff's] expectancy; (c) the relationships between [the parties]; (d) the interest [the interfering party] sought to advance; and (e) the social interest in protecting [the plaintiff's] expectancy and in protecting [the defendant's] freedom of action. Id. (citing Rest. of Torts §767).

While the allegations in Stryker's complaint may "offer[] no insight into what types of actions" Stryker alleges the defendants engaged in, the defendants bear the burden of proving that a privilege covered their actions. Assembly Component Sys., Inc. v. Platinum Equity, LLC, No. 09-CV-778, 2010

29

WL 2719978, at *9 (E.D. Wis. Jul. 7, 2010). "[G]iven that wrongfulness of conduct is, by its nature, a factually intensive question, it would be improper for the court to dismiss [the] tortious interference claim on [the basis of privilege] . . . ." Id.; see also, Gen. Verage Sales Co. of Oshkosh v. E. Side Winery, 396 F. Supp. 590, 594 (E.D. Wis. 1975) (holding that the determination of privilege and whether a party's "conduct was merely competitive or improper is a factual question which cannot be decided on a motion to dismiss.").

As stated above, Stryker has alleged each element of a tortious interference with business relations claim. But, as noted earlier, Stryker brought Count IV against Spine Group, Great Lakes, Breitenbach, Healthwerks, Biomet and the sales representatives. The court already has found that Stryker alleged no facts to support such a claim against the sales representatives. The above-described provisions of Count IV allege specific acts of intentional conduct only by Spine Group, Great Lakes and Breitenbach. It has not alleged an specific acts by Healthwerks and Biomet. Most important, and relevant to all the named defendants, Stryker's tortious interference with prospective business relationships claim suffers from the same deficiencies as its tortious interference with contract claim: it does no more than go through a formulaic recitation of the elements, with no factual grounds (beyond labels and conclusions) to back them up. Accordingly, the court will grant the motions to dismiss Count IV.

In Count IX, Stryker alleges that it had valid business relationships with customers and that the sales representatives had knowledge of those relationships. Docket #40 at ¶157-58. Stryker alleges that even though the sales representatives knew of those relationships, they "intentionally and unjustifiably interfered with Stryker Spine's business relationships with its customers and/or prospective customers by soliciting Stryker Spine's customers to leave . . . and move their business to Healthwerks and/or Biomet." Id. at ¶159. According to Stryker, no privilege or justification protected the sales representatives. Id. at ¶160. Finally, Stryker alleges that the sales representatives' interference resulted in money damages, the loss of value of the confidential information, customer relationships, goodwill, and reputation. The sales representatives raised the same arguments against this claim that the declaratory plaintiffs raised against Count IV; the court reaches the same conclusions with regard to those arguments. Again, however, the court finds that all Stryker has done is allege the bare elements of the cause of action, without including any factual grounds to put a bit of meat on those bar bones. The court also will dismiss Count IX.

7.    Injury to Business (Wis. Stat. §134.01)

In Count V of the counterclaim, Stryker alleges that "Spine Group (SGW, Great Lakes and Breitenbach), Healthwerks, Biomet and Sales Representatives" caused it injury to business under Wis. Stat. §134.01. Docket #40 at 23. Wis. Stat. §134.01 states:

> Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully

or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

Wis. Stat. §134.01.

The Wisconsin Supreme Court first laid out the standards for a claim under Wis. Stat. §134.01 in Radue v. Dill, 74 Wis. 2d 239 (1976). There, "the plaintiff's allegation that the defendants had conspired for the purpose of willfully and maliciously injuring the plaintiff in his reputation, trade and profession, combined with the plaintiff's allegation that the conspiracy caused him injury, sufficed to state a claim." Brew City Redevelopment Group, LLC v. Ferchill Group, 297 Wis. 2d 606, 618 (2006) (quoting Radue, 74 Wis. 2d at 244-45). Later, in Brew City, the plaintiff stated a cause of action "that the defendants acted together for the common and agreed upon purpose of injuring Brew City's reputation and business, and acted maliciously and intentionally to injure Brew City's reputation and business. It also incorporate[d] by reference the factual allegations in the complaint as a whole. Finally it assert[d] damages." Brew City, 297 Wis. 2d at 618. Despite the parties' arguments and the lower courts' rulings, the Wisconsin Supreme Court determined that Brew City had "properly pled" damages in tort by stating that they had "sustained financial and other injuries, including those injuries set forth above [under breach of contract]." Id. at 623. The court allowed the claim to stand.

To prove a claim under §134.01, "a plaintiff must prove that (1) the defendants acted together; (2) with a common purpose to injure the plaintiff's reputation or business; (3) with malice; and (4) the plaintiff suffered financial harm." Virnich v. Vorwald, 664 F.3d 206, 213 (7th Cir. 2011).

In Virnich, the district court dismissed the §134.01 claim at the pleadings stage, finding that the plaintiff had not pleaded a plausible conspiracy. Virnich, 664 F.3d at 213. The defendants had sought the dismissal because the plaintiff had based the claim "on vague aspersions, conclusory statements, and supposed wrongful conduct." Id. The defendants specifically questioned why the interfering party would "endanger his career . . . by entering into a conspiracy." Id. The Seventh Circuit reversed, stating:

> These are fine questions for summary judgment, but to accept such doubts as dispositive on a Rule 12(b)(6) motion to dismiss would in effect amend Wisconsin law to prohibit section 134.01 conspiracy claims in any situation in which receiverships or other professional contracts are involved. Wisconsin law has not gone that far. . . . [T]o allege the requisite conspiracy for a viable section 134.01 claim under Wisconsin law, a plaintiff must allege an agreement between two or more people, and acts taken in furtherance of that agreement.

Id. The Seventh Circuit allowed the claim to stand, noting, "Is [the plaintiff's] claim probable? Perhaps not. But it has met the plausibility standard of Twombly and Iqbal." Id.

In this case, Stryker has alleged that the declaratory plaintiffs and the sales representatives "conspired and acted together for the common and agreed upon purpose of injuring Stryker Spine's reputation and business." Docket #40 at ¶117. Stryker states, "Specifically, [the defendants] acted willfully and/or

33

maliciously by conspiring to . . . intentionally mislead Stryker Spine into believing that Spine Group was engaged in good faith negotiations to renew" the 2008 agreements, even though the declaratory plaintiffs and the sales representatives simultaneously negotiated contracts with Biomet. Id. at ¶118. Stryker also alleges that the declaratory plaintiffs and sales representatives willfully and maliciously solicited "Stryker Spine's customers to leave Stryker Spine and move their business to Healthwerks and/or Biomet." Id. Finally, Stryker alleges that it suffered money damages, the loss of its confidential information, customer relationships, good will and reputation. Id. at ¶119.

Stryker may face greater hurdles at trial or on a motion for summary judgment in attempting to factually prove this claim. At the pleadings stage, however, Stryker has alleged a claim for injury to business that is plausible on its face, and the court will deny the motions to dismiss Count V.

8. Fraud

Finally, in Count VI, Stryker alleges that "Spine Group (SGW, Great Lakes, and Breitenbach" committed fraud. Docket #40 at 24. As discussed in Section IV(B) above, Fed. R. Civ. P. 9(b) requires heightened pleading for fraud allegations. U.S. ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc., 772 F.3d 1102, 1105-06 (7th Cir. 2014). This requirement "includes pleading facts that make the allegation of fraud plausible." Id. at 1106. Further, "[t]he complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." U.S. ex rel.

Grenadyor, 772 F.3d at 1106. Stryker must specifically allege "the who, what, when, where, and how" of the fraud in order to meet the "particularity" requirements of the federal pleading standards for fraud. Bank of Am., N.A. v. Knight, 725 F.3d 815, 818 (7th Cir. 2013) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)). The Seventh Circuit has warned plaintiffs against "lump[ing] all of the defendants together" and failing to "describe[e] which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct." Bank of Am., 725 F.3d at 818 (citations omitted).

Stryker alleges in Count VI that Spine Group, Great Lakes and Breitenbach made a series of misrepresentations during contract negotiations in 2011 and 2013. Docket #40 at ¶124. Stryker alleges that during those negotiations, the declaratory plaintiffs "indicated . . . they wanted to continue being Stryker Spine's exclusive agent for the promotion and sale of" Stryker's products within the territory. Id. at ¶125. As a result of those "representations," the declaratory plaintiffs "continued to sell" Stryker's products "and receive commissions pursuant to the terms of the 2008 Agreements." Id. at 125.

These allegations might suffice were Count VI not subject to Rule 9(b)'s heightened pleading standard. But under that heightened standard, they do not specifically include the identity of the person making the misrepresentation, the time, place, and content of the misrepresentations, or the method of communication. The court cannot find that Stryker has properly

pled a fraud claim that is plausible on its face and that can survive a Rule 12(b)(6) motion. Therefore, the court will grant the declaratory plaintiffs' motions to dismiss Count VI.

## V.    Conclusion

For the reasons stated above, the court orders as follows:

The court **GRANTS** the motion to dismiss Count I, breach of express contract, for failure to state a claim upon which relief may be granted.

The court **GRANTS** the motion to dismiss Count II, tortious interference with contract, for failure to state a claim upon which relief may be granted.

The court **DENIES** the motion to dismiss Count III, breach of implied contract.

The court **GRANTS** the motion to dismiss Count IV, tortious interference with prospective business relations, for failure to state a claim upon which relief may be granted.

The court **DENIES** the motion to dismiss Count V, injury to business under Wis. Stat. §134.01.

The court **GRANTS** the motion to dismiss Count VI, fraud.

The court **GRANTS** the motion to dismiss Count VII, promissory and equitable estoppel (in the alternative).

The court **DENIES** the motion to dismiss Count VIII, breach of contract against the sales representatives.

The court **GRANTS** Count IX, tortious interference with prospective business relationships against the sales representatives, for failure to state a claim upon which relief may be granted.

The court **GRANTS** the motion to dismiss Count X, breach of duty of good faith and fair dealing, for failure to state a claim upon which relief may be granted.

Dated at Milwaukee, this ____15th____ day of May, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge