UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HEALTHWERKS, INC.; SPINE GROUP OF WISCONSIN, LLC; GREAT LAKES SPINE GROUP, LLC; and PAUL BREITENBACH,

        Plaintiffs,

And

BIOMET SPINE, LLC.

        Involuntary Plaintiff,

v.

STRYKER SPINE,
A Division of Howmedica Osteonics Corp.,

        Defendant.

Case No. 14-cv-93-pp

---

HOWMEDICAL OSTEONICS CORP.,

        Counter-Plaintiff,

And

BIOMET SPINE, LLC,

        Involuntary Counter-Defendant

v.

HEALTHWERKS, INC.; SPINE GROUP OF WISCONSIN, LLC; GREAT LAKES SPINE GROUP, LLC; and PAUL BREITENBACH,

        Counter-Defendants,

And

MIKE ROGERS, SCOTT OLIN, DAN GRAY, JOHN
MURRAY, NICK NOVACK, ANNIE BRAUER, and
TODD POTOKAR,

        Third-Party Defendants.

---

**ORDER DENYING PLAINTIFFS' AND THIRD-PARTY DEFENDANTS' CIVIL L.R. 7(h) EXPEDITED NON-DISPOSITIVE MOTION TO COMPEL STRYKER SPINE TO PRODUCE ITS WITNESSES' RELEVANT TEXT MESSAGES (DKT. NO. 205)**

---

<u>Motion</u>

On April 25, 2016—ahead of what was then the March 23, 2016 trial date—the plaintiffs/third-party defendants filed this motion. Dkt. No. 205. The motion indicated that on April 12, 2016, the plaintiffs/third-party defendants had received from Stryker twenty-one text messages, all from a records custodian who had not been working for Stryker until after the filing of the lawsuit. <u>Id.</u> at 2. Several days later, Stryker informed the plaintiffs/third-party defendants that it had not searched any of its other employees' phones for relevant text messages. <u>Id.</u> The movants indicated that, while Stryker never had objected to their discovery demands that Stryker produce such text messages, Stryker now was arguing that it would not produce the texts absent a court order. <u>Id.</u>

The movants reminded the court that Stryker had produced tens of thousands of pages of "rolling" discovery in the nine months between March and November 2015. <u>Id.</u> Some of that discovery contained text messages. <u>Id.</u> at 2. The movants argue, however, that because of the format in which Stryker produced the discovery, the movants couldn't search the discovery for texts,

2

and therefore, the movants asked Stryker "several times" to state whether Stryker had produced texts, along with other discovery. Id. According to the movants, Stryker did not respond to these requests; rather, it pushed the movants to respond to its own discovery demands. Id. Finally, in April 2015, with trial looming, the movants "isolated the Stryker text issue." Id. At this point, Stryker first said it would look into the issue, but, according to the movants, then refused to review the texts of Ed Macy and Eric Romsey to determine whether they had any responsive texts. Id. at 3-4. Apparently, Stryker's theory—according to the movants—was that by waiting throughout the discovery period for Stryker to produce the texts, the movants somehow had waived their right to expect them. Id. at 4.

Supporting Documentation

In support of the motion, the movants provided the declaration of Attorney Maher, dkt. no. 206, and several attachments. The last attachment provides the background for the tangled facts that result in this motion. It is the plaintiffs' first set of interrogatories and requests for production, dated December 31, 2014. Dkt. No. 206-4. The sixteen-page document contains forty-three requests for production and five interrogatories. Each request for production demands that the other side "produce every document that you claim supports" a particular contention, or "produce any document that you claim" supports any contention. Paragraph B of the demand, which defines the word "document," is almost a full page long. Id. at 2-3. At the beginning of its list of every possible thing that the word "document" could mean, the definition

3

includes "computer-stored or generated" things, and later mentions "any written or oral communication(s) of any kind." Id. At the end of the definition are these sentences:

> The term shall include data or information in the electronic or magnetic form including but not limited to emails, with any and all attachments, and databases and/or spreadsheets. Electronic information shall be produced as single-paged TIFFs with a load file (.OPT or .LFP) and a load file that contains a path to the OCR.

Another attachment contains an email from Attorney Maher to Attorney Werber, dated November 1, 2015—ten months after the discovery demands, and two weeks before the close of discovery. Dkt. No. 206-1. The email contains the following sentence: "On a separate note, please confirm that you have produced all responsive texts from Stryker employees' phones." Id. at 1.

The movants also attached the deposition of Edward Macy, taken on July 21, 2015. Dkt. No. 206-3. The transcript reflects a confusing series of questions and answers between Attorney Harvey and Mr. Macy. While Harvey was asking questions about texts, Macy did not seem to understand, or directly answer, the questions. It appears that Macy *did* text with people; it is not clear who those people were, or what the subjects of those texts might have been. While Harvey asked Macy if he texted "with anybody about this lawsuit," "[o]r about the breakup, any of it," Macy responded that if he was "texting someone about this situation, it would be about arrival or departure information getting into Wisconsin. It would not be about substantive information." Id. at 2-3.

The final attachment contains an email chain forty-nine pages long, which appears to start with an email from Attorney Werber to Attorney Maher

4

dated March 31, 2016, asking about texts the plaintiffs/third-party defendants had produced. Dkt. No. 206-2 at 45-6. The chain contains an email from Attorney Maher to Attorney Werber dated April 4, 2016, in which Attorney Maher says, "On a separate but related note, I would appreciate it if someone from your team would respond to our inquiries about the lack of any texts in the Stryker production despite testimony from several witnesses that they texted about the subject the relationship between the parties. We have reviewed the tens of thousands of documents produced by Stryker and I do not believe that there is a single text among them." Id. at 36-37.

In response, Werber stated that same day, "Whether we have or have not produced texts is irrelevant to what we are following up on here." Id. at 34. Maher wrote back (the same day): " . . . what I'm trying to follow up on here . . . is the absence of Stryker texts. I am trying to avoid a motion on a question we have asked your team several times over the past few months but have received no response. Not even a 'we are looking into it.' Perhaps we should set up a meet and confer on the subject. Please let me know. I would like to avoid further motion practice." Id. at 33.

Werber in response: "We do not agree that Stryker's texts are relevant to Olin's incomplete production. * * * In order to be responsive, however, I refer you to your own brief (in response to the motion to compel) where Spine Group represented to the Court that Stryker Spine did not produce a single text message in this case. As it turns out, that representation is not true because we did produce text messages (see e.g. STRSGW00003627)." Id. at 32.

5

At this point, Attorney Harvey joined the chain, indicating that the text Werber had referred to was from Todd Potokar to Mariano Luna. Id. at 29. Harvey indicated that the movants couldn't see "any texts between Luna and any other Stryker witness/employee, and we are also not finding any texts to/from Eric Romsey, Ed Macy, or any other Stryker witnesses/employees." Id. Harvey explained that the format of production made it impossible for the movants to search the discovery solely for texts, and said, "That is why we have been asking—for months—whether you produced any texts." Id. Harvey asked Werber to identify any other texts Stryker may have produced, or in the alternative, for a meet-and-confer. Id. Werber responded that he was checking on "your metadata question," but said, "As for the meet and confer, what would this be about? Fact discovery closed in November." Id. at 28. Harvey: "It would be about your failure to produce responsive texts." Id. at 26. The spat continued for another twenty-five pages. Unresolved, it resulted in the filing of the current motion.

Response

Stryker filed its response on May 4, 2016. Dkt. No. 207. The basis for Stryker's objection to producing the requested text messages was that discovery had closed on November 16, 2015, and the movants hadn't filed their motion to compel until five months later, and one month prior to the then-upcoming trial. Id. at 2. Stryker argued that the movants did not even seek to meet and confer about the texts until April 4, 2016—again, months after discovery closed. Id. Stryker cited authority supporting the proposition that a

6

motion to compel filed after the close of discovery is untimely, and encouraged the court to discredit the movants' assertion that the format of the discovery Stryker had produced made it difficult for them to determine whether Stryker had produced texts. Id. at 3. Stryker argued that the movants could've resolved the issue by "reviewing the documents themselves, reviewing the metadata Stryker Spine provided with all document productions, requesting a meet and confer or even moving to compel." Id. They argued that the movants' failure to do any of these things until "the eve of trial" was "fatal to their motion." Id.

Nonetheless, Stryker offered "to consider the [movants'] request, provided that [movants'] narrow the timeframe and topics of the requested documents." Id. at 4. Stryker indicated that in response to this offer, the movants "demanded that Stryker Spine search for texts from all 10 witnesses under Stryker Spine's control identified in its Supplemental Rule 26(a)(1) disclosures for an entire 1 year period." Id. It argues that the movants did not "even attempt to provide key words or topics to help Stryker Spine determine the scope and burden of the late-requested discovery." Id. Stryker characterized this as "patently unreasonable." Id. Finally, Stryker argued that the movants failed to "articulate to both Stryker Spine and the Court why they suddenly need additional fact discovery less than 4 weeks before trial." Id. Stryker indicates that the movants should have identified "what a text message might show that is not duplicative of other evidence adduced during discovery. In other words, why are text messages now the subject of a motion to compel?" Id.

7

Stryker contended that the movants had filed their motion just to distract Stryker from preparing for trial. Id.

Analysis

So. On December 31, 2014, the movants served on Stryker discovery demands requesting any kind of document containing any kind of information about a whole bunch of stuff. Lawyers experienced in these sorts of demands—as Stryker's counsel are—certainly would have figured out that one electronic form of communication the movants might have been seeking would have been texts.

In response to these broad demands, Stryker—over the course of the next ten months—served tens of thousands of pages of discovery on the movants. In July, the movants conducted a deposition of Mr. Macy, and their counsel, Mr. Harvey, asked Mr. Macy a handful of questions about whether he texted "anybody" about the "lawsuit" or the "breakup." Macy gave confusing answers, from which one might derive that he texted someone about travel, but not about anything "substantive."

The movants indicate that for "months" prior to filing this motion to compel, they asked Stryker whether it had produced all texts responsive to the discovery demand, but received no response. They produce an email from Attorney Maher to Attorney Werber dated two weeks before the discovery cutoff, asking that same question. The discovery cutoff came and went; the movants did not file a motion to compel before the cutoff. On April 4, 2016—four months after discovery had closed, and about six weeks before the then-

8

scheduled trial date, the movants asked Stryker again whether it had produced all texts responsive to the December 2014 discovery demands. Stryker responded to these requests in a less-than-professional tone; the movants countered with threats to file this motion.

The court will deny the motion to compel. As Stryker notes, the movants filed this motion almost six months after discovery had closed. The discovery period was quite extensive—the case was removed to this court on January 28, 2014, and assigned to Judge Stadtmueller. He did not set a discovery deadline during the twelve months that he had the case, and presumably the parties could have exchanged some discovery during that time. The movants filed their discovery demands December 31, 2014 (making the discovery due January 30, 2015). After the case was assigned to this court, the court issued a scheduling order, requiring the parties to complete all fact discovery by November 16, 2015—almost two years after the case came to federal court, and almost eleven months after the movants filed their discovery demands. By the time the movants filed this motion, the parties already had fully briefed their motions for summary judgment (indeed, the May 23 trial date had to be moved because the court had not yet ruled on those motions).

The court understands the movants' explanation for why they did not file the motion until April 2016. But their failure to realize before the close of discovery that they could not search the discovery specifically for texts is not a basis for granting a late-filed motion to compel. The Seventh Circuit has held, in situations similar to this one, that district courts do not abuse their broad

9

discretion in denying motions to compel filed after the close of discovery (and, in this case, after summary judgment was fully briefed). See, e.g., Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 2058 (7th Cir. 2000); Packman v. Chicago Tribune Co., 267 F.3d 628, 647 (7th Cir. 2001); Justise v. Zenith Logistics, Inc., 186 Fed. App'x 680, 683 (7th Cir. 2006).

The court **DENIES** the plaintiffs' and third-party defendants' motion to compel Stryker Spine to produce its witnesses' relevant text message. Dkt. No. 205.

Dated in Milwaukee, Wisconsin this 6th day of March, 2017.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge