UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STRYKER SPINE, a Division                                    Case No. 14-cv-93-pp
of Howmedica Osteonics Corp.,

                              Plaintiff/Counter-Defendant,

v.

SPINE GROUP OF WISCONSIN, LLC,
PAUL BREITENBACH, and TODD POTOKAR,

                              Defendants/Counter-Plaintiffs.

---

**ORDER GRANTING JOINT MOTION FOR VACATUR UNDER RULE 60(b)
(DKT. NO. 357)**

---

**I.    Background**

      This case began with a complaint filed in Ozaukee County Circuit Court on January 15, 2014, dkt. no. 1-1, and culminated in a five-day jury trial in federal court, with the jury returning a $2 million dollar verdict for the plaintiff on September 28, 2017, dkt. no. 337. The defendants timely filed a Rule 50(b) motion for a judgment as a matter of law or, in the alternative, a Rule 59 motion for new trial. Dkt. No. 344. After the plaintiff filed a brief opposing that motion, dkt. no. 354, the parties filed a stipulation, notifying the court that they had reached a settlement in principle and asking the court not to enter judgment on the jury's verdict, dkt. no. 355.

      On February 19, 2018, the parties filed a "Stipulated Order of Dismissal With Prejudice," dkt. no. 357; the stipulation provided that the court would vacate "A. all prior rulings of the Court; B. all prior findings regarding damages,

1

costs and fees; C. all prior rulings regarding summary judgment, motions in limine and evidentiary matters; and D. the September 15, 2017 jury verdict." Id. The stipulation also provided that the court "shall retain jurisdiction of this matter and the Parties to enforce the Confidential Settlement Agreement." Id. at 2.

A week later, on February 26, 2018, the court issued an order construing the stipulation as a motion for vacatur under Rule 60(b). Dkt. No. 358. The court's order recounted the case law regarding motions for vacatur, and concluded that

> if, as the court believes, the parties require the court to grant their Rule 60(b)(6) motion in order to effectuate the settlement, it would be helpful to the court if they would provide it with information regarding the balance of equities in relation to the vacatur provision of the settlement.

Dkt. No. 358 at 7. The court also noted that, under Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994), "the parties may wish to make clear in any supplement they file whether they wish the court to incorporate into any dismissal order either the terms of the settlement agreement or any specific term of the settlement agreement." Dkt. No. 358 at 8.

Six weeks after the court entered that order, the parties filed a brief in support of the motion for vacatur. Dkt. No. 359. In reviewing that brief, the court noted that the parties had asked the court to vacate "all prior rulings of the court"—apparently a request that the court vacate not only any substantive rulings, but any rulings on motions to seal and other procedural rulings. In an April 13, 2018 order, the court identified this issue and asked the parties to

provide an additional submission detailing the specific court orders they wanted the court to vacate. Dkt. No. 360. The parties responded on April 24, 2018, asking that the court constrain the motion for vacatur to the following docket entries: Dkt. Nos. 39 (order denying motion to dismiss); 81 (order granting in part and denying in part motion to dismiss); 215 (order granting in part and denying in part motion for summary judgment); 242 (order granting in part and denying in part motion to reconsider summary judgment); 255 (order denying motion to compel); 274 (order denying sanction and granting motion to preclude expert); 324 (text-only order dismissing Great Lakes Spine Group, LLC as a defendant); 337 (jury verdict); 340 (minute order from final pretrial conference); 341 (order resolving motions *in limine*); and 342 (minute entry denying defendants' post-trial motion), as well as three text-only orders entered on March 4, 2017.

## II.  DISCUSSION

### A.  Parties' Motion to Vacate

Federal Rule of Civil Procedure 60(b)(6) allows the court to relieve a party from a final judgment, order or proceeding "on motion and just terms," for "any other reason [than those identified in Rule 60(b)(1)-(5)] that justifies relief." Now that the the court has construed the parties' stipulation as a motion for vacatur, dkt. no. 358, the court must consider whether the parties have satisfied the "just terms" requirement of Rule 60(b).

As the court previously noted,

> Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to

accomplish justice." Klapprott v. U.S., 335 U.S. 601, 614-15 (1949). District courts have "great latitude" in deciding whether to vacate orders or judgments under Rule 60(b)(6). Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc., 570 F.3d 845, 848 (7th Cir. 2009) (citing Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996)).

But Rule 60(b)(6) "is fundamentally equitable in nature." Ramirez v. United States, 799 F.3d 845, 851 (7th Cir. 2015) (citations omitted). In considering requests to vacate jury verdicts, or judgments, district courts have been "guided by the array of equitable factors of justice and hardship traditionally balanced by district courts in considering requests for Rule 60(b) relief," such as "the public interests in precedent, preclusion, and judicial economy and the circumstances, hardships, and interests of private parties." Mayes v. City of Hammond, Ind., 631 F. Supp. 2d 1082, 1088 (N.D. Ind. 2008).

Dkt. No. 358 at 5.[1]

1. *Public Interests—Precedent*

The parties argue that a vacatur in this case will not destroy important precedent. Dkt. No. 359 at 6. They observe that the jury's verdict itself has no precedential value, given that it was based on the unique facts of the case. Id. at 6. They also emphasize that the court's other rulings—on summary judgment, motions *in limine* and various discovery issues—hinged on fact-specific issues and would have limited application in other cases. Id. (citing Gould v. Bowyer, 11 F.3d 82, 84 (7th Cir. 1993) ("A district court decision binds no judge in any other case, save to the extent that doctrines of

---

[1] The court agrees with the parties that the "'exceptional circumstances' standard discussed in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994), does not apply to a motion to vacate in this Court." Dkt. No. 359 at 1. See Lundsten v. Creative Cmty. Living Serv.'s, Inc., Case No. 13-C-108, 2016 WL 111431, at *1 (E.D. Wis. Jan. 11, 2016) (citing Marseilles Hydro Power LLC v. Marseilles Land & Water Co., 481 F.3d 1002, 1003 (7th Cir. 2007)).

4

preclusion (not stare decisis) apply.")). The parties claim that federal courts should be less concerned about vacating orders that address matters of state law, id. at 6-7 (citing Hartford Ca. Ins. Co. v. Crum & Forster Specialty Ins. Co., 828 F.3d 1331, 1336 (11th Cir. 2016)), and that two cases in the past two years have addressed issues resolved by the court in this case, id. at 7 (citing C.G. Schmidt, Inc. v. Permasteelisa N. Am., 825 F.3d 801, 807 (7th Cir. 2016); The Manitowoc Company v. Lanning, 906 N.W.2d 130 (Wis. 2018)).

In the parties' April 24, 2018 supplement specifying which orders they wanted the court to vacate, they listed two orders on motions to dismiss (dkt. nos. 39 and 81); an order denying summary judgment (dkt. no. 215); an order reconsidering the summary judgment order (dkt. no. 242); various orders on discovery and trial issues, and the jury verdict (dkt. no. 337). This is a far more extensive request than the one made in Mayes, where "the parties [sought] vacatur only of the jury verdict and final judgment but not, critically, of any prior opinions or orders of the Court, including its summary judgment decision." Mayes, 631 F.Supp.2d at 1089.

Nonetheless, the court recognizes that its opinions do not bind other judges in other cases. This court's pre-trial decisions would have only persuasive authority in future cases, and given the unique implosion of a business relationship that sparked (and fueled) this litigation, the court agrees that its decisions might have only limited persuasive authority, at that. While the court admits some frustration with the fact that it spent hours of resources writing the decisions that the parties now seek to vacate—hours that would

5

have been saved had the parties reached agreement before trial—it would be nothing but hubris for the court to conclude that these decisions constituted important precedent on Wisconsin law.

    2.    *Public Interests—Preclusion*

With regard to preclusion, the parties argue that a vacatur will have no impact on issue or claim preclusion, because the court has not entered a final judgment in the case. Dkt. No. 359 at 7 (citing Kruckenberg v. Harvey, 694 N.W.2d 879, 884, 892 (Wis. 2005) (noting that existence of a final judgment is a prerequisite for claim and issue preclusion)).

The only reason the court has not entered a judgment on the jury's verdict is because the parties asked the court to stay the issuance of a judgment pending their settlement. Dkt. No. 355. For the parties to ask the court to forestall entering judgment on the jury verdict, and then argue that there can be no preclusion because there is no judgment, appears somewhat disingenuous. That being said, the court has an obligation to analyze the parties' argument.

Had the parties not asked the court to withhold entering judgment so that they could finalize a settlement—a settlement that the court now knows is conditioned on vacatur—the court would have entered judgment in favor of the plaintiff on the jury's verdict. In order to analyze this factor, the court will imagine for the sake of argument that it had entered a judgment consistent with the jury's verdict, and will analyze the impact that vacating that judgment would have on the future application of preclusion doctrines.

If the court grants the parties' motion for vacatur of that imaginary judgment, it would deprive any subsequent court of the ability to dismiss any future litigation involving these parties on the grounds of claim preclusion or issue preclusion (referred to collectively as *res judicata,* see Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). That raises the question of whether any future court could apply such doctrines.

Because it sits in diversity, the court looks to Wisconsin law in analyzing whether a future court could apply the doctrines of preclusion. CFE Grp., LLC v. Firstmerit Bank, N.A., 809 F.3d 346, 351 (7th Cir. 2015) (quoting Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) ("Federal common law governs 'the claim-preclusive effect of a dismissal by a federal court sitting in diversity.' Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001). As a general rule, federal common law borrows the preclusion principles of the laws of the state in which the federal court that dismissed the diversity suit sat. Id.").

Under Wisconsin law, claim preclusion means that "a final judgment on the merits will ordinarily bar all matters which were litigated or which might have been litigated in the former proceedings." Kruckenberg, 694 N.W.2d 879, 884 (Wis. 2005) (internal quotations omitted). The doctrine has three elements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." Id. at 885.

The parties represent to the court that their settlement resolves "this matter and all disputes which were asserted or could have been asserted in this matter pursuant to a Confidential Settlement Agreement." Dkt. No. 357 at 2. The court hopes that is true; it is hard to imagine that the parties might want to litigate any of these issues further. This case took over four years to litigate and originally involved thirteen parties and twelve causes of action; the court would be surprised if the litigants later discover some stone unturned, and decide that a new, separate case is warranted. In short, the court is not concerned with the effects that the vacatur would have on any prospective claims made by these same parties, primarily because the court fervently hopes that the parties have aired all possible grievances relating to the events discussed at trial.

Issue preclusion, on the other hand, "addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action." Mrozek v. Intra Financial Corp., 699 N.W.2d 54, 61 (Wis. 2005) (citing Northern States Power Co. v. Bugher, 525 N.W.2d 723 (1995)). "In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and be necessary to the judgment." Id. After deciding whether issue preclusion may apply as a matter of law, a court then conducts a fairness analysis to determine whether it would be fundamentally fair to employ issue preclusion to the case. Id.

To evaluate issue preclusion concerns, the court must speculate as to the future case that might invoke the doctrine. In <u>Mayes v. City of Hammond</u>, the court had an actual case in which it could examine the applicability of issue preclusion—the potential civil case of that Mayes' co-defendant in the underlying criminal case might bring against the defendant. <u>Mayes</u>, 631 F.Supp.2d at 1090. Here, the court is unaware of any related litigation, or any possible individuals or entities who were not a party to this case who might wish to sue on related claims. The issue of preclusion does not weigh against vacatur.

### 3. *Public Interests—Judicial Economy*

The parties observe that permitting the settlement in this case will allow the court to focus on other matters; they assert that without a settlement, this court—as well as the Seventh Circuit—"would have expended additional time and resources (on top of the four years of litigation already behind us) working to resolve this case[.]" <u>Id.</u> at 8. The court does not doubt this assertion for a minute. And for that reason, this is the hardest factor for the parties to satisfy.

Until January 8 of this year, the fact that this litigation had consumed, and was consuming, extensive court resources, not to mention a week of the jurors' lives, did not give the parties an incentive to settle. It was not until the jury issued a verdict that doubtless was a disappointment to both parties—finding liability on behalf of the defendants, and awarding damages far less than what the plaintiff had requested—that the parties appear to have developed a concern for saving court resources.

But the other side of that coin is that "the settlement in this case would conserve judicial resources by obviating the need for further [district and] appellate proceedings." Lundsten, 2016 WL 111431, at *1. The parties state that, regardless of how the court might rule on the pending motion for a new trial, one of them would pursue appellate litigation. That means that, without vacatur, both the district court and the appellate court would expend further resources on a case that—as of now—has been amicably settled.

The court is mindful against committing the "sunk cost fallacy"—"a greater tendency to continue an endeavor once an investment in money, effort, or time has been made." Arkes, Hal R. & Blumer, Cathrine, *The Psychology of Sunk Cost,* ORGANIZATIONAL BEHAVIOR AND HUMAN DESIGN PROCESSES, vol. 35 no. 1 (Feb. 1985). To deny the vacatur and to expend further court resources in deciding the pending motion for new trial solely because the court already has expended a good deal of effort would be the equivalent of throwing good money after bad, both for the court and for the parties. See Janky v. Batistatos, No. 2:07-CV-339 PPS APR, 2008 WL 4411504, at *1 (N.D. Ind. Sept. 25, 2008) ("Cheryl Janky and her lawyers have evidently fallen prey to the 'sunk-cost fallacy' a theory in which individuals throw good time and money after bad even when the logical decision is to cut bait."); see also In re Kmart Corp., 359 F.3d 866, 873 (7th Cir. 2004) ("To abjure new profits because of old debts would be to commit the sunk-cost fallacy; well-managed businesses are unlikely to do this. Firms that disdain current profits because of old losses are unlikely to stay in business.")

The logical choice here is to cut bait. The court will weigh the judicial economy factor in favor of vacatur.

4. *Private Interests*

As for the private interests advanced by granting vacatur, the parties state that "[s]ettlement allows both sides to put this tremendously expensive litigation behind them and focus attention on their productive business pursuits." Id.

In its February 26, 2018 order, the court suggested that, if necessary to support the vactur motion, the parties could file the confidential settlement agreement under seal. Dkt. No. 358 at 7. They did not do so. That means that the court has no way to evaluate whether the agreement represented a fair compromise in light of the jury's $2 million verdict (a question other courts have considered in ruling on vacatur motions). The court can rely only on its own speculation that the fees and costs accrued over the past four and a half years, and 360-plus docket entries would cause any rational litigant to want to stanch the bleeding.

5. *Conclusion*

The court concludes that all four factors weigh in favor of vacatur.

B. "Retaining Jurisdiction"

There is one last issue, one that the court raised in its February 26, 2018 order. The parties ask the court to include the wording "the court shall retain jurisdiction of this matter and the parties to enforce the Confidential Settlement Agreement, which is incorporated herein by reference only." Dkt.

11

No. 359-1 at 2. In its February 26 order, the court alerted the parties to the Supreme Court's decision in Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994), and to its concern that if the parties did not incorporate the terms of the settlement into the order dismissing the case, the court might not have any ancillary jurisdiction to enforce the agreeement. In response, the parties assert that the language they included in their original proposed order, simply providing that the court retained jurisdiction, complied with Kokkonen. Dkt. No. 359 at 12. They offer, however, that if the court is concerned about the issue, it could instead state that "the Court shall retain jurisdiction of this matter and the Parties to enforce the Confidential Settlement Agreement, which is incorporated herein by reference only." Id.

The relevant language of Kokkonen provides:

> If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action "shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper," the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order. Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.

Kokkonen, 511 U.S. at 381-82 (emphasis in original).

The parties implicitly acknowledge that years after the Supreme Court decided Kokkonen, the Seventh Circuit has spoken with two voices on whether a simple statement by the district court that it retains jurisdiction to enforce the settlement is sufficient. See Shapo v. Engle, 463 F.3d 641, 643 (7th Cir. 2006) ("a district judge cannot dismiss a suit with prejudice, thus terminating federal jurisdiction, yet at the same time retain jurisdiction to enforce the parties' settlement that led to the dismissal with prejudice."); but see Hill v. Baxter Healthcare Corp., 405 F.3d 572 (7th Cir. 2005) (quoting Kokkonen, but noting that the lower court "did not expressly retain jurisdiction," implying that had it done so, the Seventh Circuit's decision might have been different). They state that "[a]lthough *Kokkonen* is at odds with Seventh Circuit subsequent authority, it is binding authority and well-reasoned," the language they propose as should resolve any issues as to future enforceability. Dkt. No. 359 at 12.

Although the parties seem unconcerned about this court's ability to enforce the terms of their undisclosed settlement agreement in the event of any future breach, the court will incorporate the parties' suggested language, while hoping that its concerns will prove to be unwarranted.

**III. Conclusion**

The court **GRANTS** the parties' joint motion for vacatur. Dkt. No. 357. The court **ORDERS** that the following orders are **VACATED**:

- Dkt. No. 39;
- Dkt. No. 81;
- Dkt. No. 215;
- Dkt. No. 242;
- Text-Only Order of March 4, 2017;

- Text-Only Order of March 4, 2017;
- Text-Only Order of March 4, 2017;
- Dkt. No. 255;
- Dkt. No. 274;
- Dkt. No. 324;
- Dkt. No. 337;
- Dkt. No. 340;
- Dkt. No. 341; and
- Dkt. No. 342;

The court **ORDERS** that it shall retain jurisdiction over this case and the parties for the limited purpose of enforcing the Confidential Settlement Agreement, which is incorporated by reference only.

The court **ORDERS** that each party shall be responsible for its own attorney's fees, costs and expenses.

The court **ORDERS** that all claims, counterclaims and third-party claims asserted by the parties or that could have been asserted in this matter are **DISMISSED WITH PREJUDICE**. The court **ORDERS** that this case is **DISMISSED.**

Dated in Milwaukee, Wisconsin this 11th day of June, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**